## HOPKINS v. HOPKINS.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1910.)

### No. 1,781.

1. PARTNERSHIP (§ 53*)—EVIDENCE TO ESTABLISH PARTNERSHIP WITH PERSON DECEASED.

Before a court of equity will accord relief by awarding to a complainant an interest in the estate of a decedent on the ground that a partnership existed between them, it must know with reasonable certainty that its decree will be just, and will be supported by competent, credible, and convincing testimony.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 76; Dec. Dig. § 53.*]

2. PARTNERSHIP (§ 53*)—SUFFICIENCY OF EVIDENCE TO ESTABLISH—PARTNERSHIP WITH PERSON DECEASED.

Evidence considered, and held insufficient to establish the existence of a partnership between complainant and his deceased brother in lands and other property of which the latter was in possession, and which he devised and bequeathed to his wife, the defendant, where the claim was inconsistent with complainant's conduct both before and after his brother's death, and was supported by no writings, accounts, or letters, although, as claimed, the partnership had existed for 16 years, during which time the brothers resided in different states and complainant had sent deceased large sums of money.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 76; Dec. Dig. § 53.*]

Appeal from the Circuit Court of the United States for the Southern Division of the District of Idaho.

Suit in equity by Solomon Hopkins against Mary M. Hopkins, as executrix of the will of Eli M. Hopkins, deceased, and in her own right

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and as heir at law and devisee of said Eli M. Hopkins. From a decree dismissing the bill, plaintiff appeals. Affirmed.

Caleb Jones and H. N. Haynes, for appellant.

Clark & Budge and Hamer & O'Connell, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. Solomon Hopkins, the appellant, and Eli M. Hopkins, his brother, were farmers owning land in Colorado. In the spring of 1889 Eli made a conveyance of his land to his brother and went to Idaho. After being there a few months, and after entering under the desert land act (Act March 3, 1877, c. 107, 19 Stat. 377 [U. S. Comp. St. 1901, p. 1548]) 480 acres of land, he returned to Colorado, where he remained some two or three months, after which he went back to Idaho, where he acquired title to his land, and purchased and acquired other lands and water rights, conducted a stock ranch, and accumulated farming implements and other personal property. On September 20, 1904, he married the appellee. On October 13, 1905, he died, leaving a last will and testament, in which he devised and bequeathed all his property to the appellee. The will was admitted to probate, and on October 15, 1906, final distribution of the whole of his estate was made to the appellee.

On the same day the appellant filed the present suit against the appellee, as heir at law and devisee of Eli, and also in her own right, alleging that in December, 1889, he and Eli had entered into a verbal agreement of copartnership, by the terms of which the appellant was to furnish the copartnership sufficient money to acquire title to property in Fremont county, Idaho, and to purchase horses, farming implements, and machinery, to reclaim, cultivate, and develop such lands as might be so acquired, and to purchase live stock to be bred thereon, and also to acquire water rights and water for the irrigation of said land; that Eli was to manage the said copartnership, and give his entire time thereto, and that all the property acquired by him in Idaho was to be the joint property of said copartnership, share and share alike—the losses, if any, to be borne equally. The bill set forth that under said agreement the appellant sent to Eli in Idaho, cattle, horses, personal property, and money to the amount of about $11,000. The cash which was sent, according to the bill and the testimony of the appellant, aggregated $7,131.85, the items whereof were 18 in number, and ranged from $26.85 to $1,000, and covered the period from January 6, 1890, to May 14, 1901. The appellant kept no books of account. He produced no writing of any kind to indicate in any way that there was a partnership. He testified that, although his brother frequently wrote him asking for money for specific purposes, he preserved none of the letters. There was no evidence that any of the sums of money so sent were used in the purchase of any of the property which Eli possessed at the time of his death, all of which stood in his individual name. There was nothing in the agreement, as shown by the appellant's testimony, to prevent the acquisition of individual property by Eli, and there is no convincing evidence that any of the property which Eli left to his widow was purchased with partnership funds.

Upon a careful consideration of the testimony, we are convinced, as was the court below, that the appellant has failed to make a case which entitles him to relief. It is true that the testimony shows beyond dispute that the appellant shipped some horses and other property to Eli, and that he sent him sums of money as alleged in the bill. There is no proof, however, aside from the testimony of the appellant, that the money was sent under a partnership agreement, and the appellant's own testimony that it was so sent is not convincing. The examination of the record in the case leaves the conviction that there were dealings between the brothers other than those which the appellant has seen fit to disclose. He admitted that in the spring of 1889, when leaving Colorado, his brother deeded to him real estate for a nominal consideration of $8,000, and that no consideration was paid on account thereof, at the time of the conveyance or afterwards, although he testified that a part of the $8,000 consideration was the assumption by him of a mortgage upon the property. He admitted, however, that he was to pay his brother the sum of $2,200 in cash, and he testified that, not only did he never pay the $2,200, but that his brother never called upon him for the payment thereof. The appellant's own testimony as to the partnership agreement is indefinite and uncertain, and at times evasive and contradictory. He testified that he was under no obligation whatever to furnish any money to Eli. At one time, while testifying, he stated that he was to share equally in the property in Idaho, in consideration of the advancement of the money and property which he claimed to have advanced. At another time he stated that the consideration was the transfer of the Colorado land by Eli to him.

He comes into a court of equity with a claim which is sustained by no scrap of writing, is evidenced by no accounting, and rests upon his own oral and indefinite testimony, and upon the admissions that Eli made to his friends and neighbors in the years 1892 and 1893, and two or three years later. There were six witnesses as to these admissions, two of whom were the brothers-in-law of the appellant. They testified that Eli had admitted the partnership relation in general terms, such as that he and his brother were "equal partners," or "general partners," or "interested in land together," or were "partners in lands in Idaho and Colorado." But four of the same witnesses testified that Eli had told them subsequently that he had settled up or divided up with his brother, and two other witnesses testified to the same effect. In addition thereto, two witnesses testified that Eli had told them that he and his brother had settled up, he taking the Idaho land and his brother the Colorado land, and that his brother was to pay him $2,000 in the settlement. The conduct of the appellant, immediately before and after the death of Eli, is inconsistent with the existence of a copartnership. He went to see his brother in Idaho in the fall of 1905, about a month before the latter's death, and remained with him for a period of two weeks. He had heard that his brother had willed all his property to his wife. He had heard, also, that his brother had stated to others that the partnership had been settled up. During that visit he made no mention to his brother, or to his brother's wife, of the subject of the alleged copartnership, or of his interest in his brother's property. When testifying, he essayed to excuse his failure to speak to his brother of

these matters on the ground that his brother was too ill to discuss business; yet he admitted that his brother was well enough to "be around" a part of the time. After his brother's death, and after the probate of his will, he went again to Idaho. He still preserved silence on the subject of his interest in the property. He saw the appellee, talked with her about some of the property of the estate, and yet never mentioned the partnership, or inquired of her whether his brother had ever informed her of it. In a conversation with one of his brother's neighbors, concerning the fact that his brother had willed everything to his wife, he testified that he remarked:

"I didn't see how he could do it, because, if anybody ever did have a friend in the world. it was me to him, and that he had no time in his life asked me for money that I didn't send it."

This was in the fall of 1905, shortly after the will had been probated. Then, if ever, was the time for the appellant to declare that he was interested as a copartner. He made no such declaration. He was there admittedly for the purpose of seeing what he could do to contest the will. and he evidently had it in his mind that his brother had dealt unjustly by him in leaving all his property to his widow, not on the ground that he (the appellant) had an interest as a copartner, but upon the ground of the long-continued friendly relations between him and his brother, and their dealings one with another. It tends strongly to prove that at that time the idea of an existing copartnership had not occurred to him, but was an afterthought. Otherwise it is difficult, if not impossible. to explain his long delay in bringing the suit, a delay until a year after his brother's death, and after there had been a settlement and final distribution of his brother's estate.

The probabilities, as they appear to us from the record, are that the appellant and Eli were partners in interest in lands in Colorado, and that the advances which the appellant made to Eli were in consideration of the transfer to him of the Colorado lands when Eli went to Idaho, and that, if there were a partnership also in the Idaho lands, it was settled and dissolved long prior to Eli's death. If such were not the case, and if, indeed, the appellant was interested as a partner in the property which stood in his brother's name at the time of his death, and which his brother, in denial of such partnership relation, devised and bequeathed to the appellee, the appellant has himself only to blame for his failure to obtain relief; for he has made relief impossible by his grossly negligent conduct in failing to preserve sufficient and competent evidence of his rights, and his utter disregard of ordinary and usual rules of business dealing. Before a court of equity will accord relief such as is sought in the present case, it must know with reasonable certainty that its decree will be just, and that it will be supported by competent. credible, and convincing testimony. In a similar case (Smith v. Burnham, 3 Sumn. 435, Fed. Cas. No. 13,019) Mr. Justice Story said:

"All that we know about it is derived from after conversations and loose confessions of the defendant, testified to by certain witnesses, which conversations and confessions, if entirely confided in, still leave the nature and terms of the agreement so loose and indefinite that it is utterly impossible to ascertain its exact and full import in all respects. so as to enable a court of equity to execute it with a confidence that it understood the whole intention

of the parties. For example, in what proportions were the parties to be interested, and to supply funds? To what purchases was the copartnership to extend? * * * What was to be the duration of the partnership? During pleasure, or life, or for a limited period? All these are questions which must be answered with definite exactness and clearness before the court could make a satisfactory decree. * * * Here there is no writing, no account, no proof of the funds of the plaintiff being actually laid out in any lands, and no proof of the inability of the defendant to make the purchases which he did make, without the money or credit of the plaintiff to aid him."

And the learned justice quoted from Lench v. Lench, 10 Ves. 518, where an attempt was made to establish, by parol declarations and confessions of a party, a trust in real estate:

"It is in all cases most unsatisfactory evidence, on account of the facility with which it may be fabricated, and the impossibility of contradicting it. Besides, the slightest mistake or failure of recollection may totally alter the effect of the declaration."

The decree dismissing the appellant's bill is affirmed.